UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN A.P.D.,[1] | No. 1:26-cv-02240-TLN-CSK |
| Petitioner, | A# 221-489-573 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Juan A.P.D.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.)  Respondents filed response.  (ECF No. 6.)  Petitioner replied.  (ECF No. 7).  For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a U.S. citizen, but he has lived in the United States for over two decades.  (ECF No. 1 at 2.)  In 2004, Petitioner entered the United States, and he has resided here continuously since.  (*Id.* at 3.)  Over the last 22 years, Petitioner has built a life in the United States:  he established a residence, secured gainful employment, obtained a driver's license, joined a faith community, and started a family.  (*Id.* at 3, 5, 18.)  Petitioner has two minor children who are U.S. citizens, for whom he is the sole physical residential custodian by court order.  (*Id.* at 15, 20, 23.)

Petitioner has no criminal history in the United States or his home country.  (*Id.* at 2; *see also* ECF No. 6-1 at 3.)

Yet, on January 23, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner, without notice or warning, while he was on his way to work.  (*Id.* at 3.)  During Petitioner's commute, three vehicles surrounded his car on the road.  (*Id.*)  ICE officers pulled him from his vehicle and arrested him.  (*Id.*)  Petitioner was not engaging in any unlawful activity at the time of his arrest.  (*Id.* at 3.)  Rather, ICE officers had scanned Petitioner's license plate and determined that the vehicle was registered to Petitioner, a noncitizen.  (ECF No. 6 at 2; 6-1 at 2.)  The day of Petitioner's arrest, Respondents instituted removal proceedings against him, which are still pending.  (ECF No. 6-4.)

Petitioner has now been in immigration detention for over three months.  (*See* ECF No. 1 at 3.)  The day of his arrest, Petitioner requested a custody determination hearing before an immigration judge.  (ECF No. 6-5.)  However, there is no record that he has received a bond hearing or other custody determination hearing.[2]  Petitioner challenges the lawfulness of his civil detention through the instant Petition.  (ECF No. 1.)

---

[2]   Petitioner claims an immigration judge denied bond and did not consider his individual circumstances.  (*See* ECF No. 1 at 4.)  It is not clear from the *pro se* Petition whether the immigration judge denied a hearing or whether an immigration judge held a hearing and made a determination to deny bond.  Immigration judges are routinely denying bond hearings on the basis of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  *See Bautista v. Santacruz,* 813 F. Supp. 3d 1075, 1082 (C.D. Cal. 2025) (observing policy for immigration judges to deny bond hearings for individuals purportedly detained under 8 U.S.C. § 1225(b).).  In the record before

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention without a bond hearing violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 6.)  Respondents contend that Petitioner's arrest and detention were lawful and, without explicitly identifying applicable detention authority, asks this Court to adopt the reasoning of case law addressing 8 U.S.C. § 1225(b)(2).  (ECF No. 6 at 3.)  The Court addresses each claim in turn.

///

this Court, neither party identifies any findings by an immigration judge, nor produces an order or record of any hearing, nor identifies a date of purported hearing.  Additionally, this Court ordered Respondents to produce "any orders of release or detention, any custody warrants or notices, and any other portions of Petitioner's A-File relevant to the determination of the issues presented in the habeas petition."  (ECF No. 4.)  Respondents supplied records but did not provide any order from an immigration judge as to bond or provide any indication that such a record existed.  (*See* ECF No. 6.)  Therefore, on the record before it, the Court cannot find that Petitioner was provided any hearing as to his detention.

[3]     Petitioner also claims his arrest violates 8 U.S.C. arrest violates 8 U.S.C. § 1357(a)(2) for failure to obtain a warrant prior to his arrest without a basis to believe he was likely to escape before a warrant could be obtained.  (ECF No. 1 at 6 (Count 2).)  Finding the requested relief warranted under Petitioner's Fifth Amendment and INA claims, the Court declines to address Count 2 in favor of judicial economy.

A.    Immigration and Nationality Act

Petitioner alleges that he is entitled to a bond hearing under the INA, 8 U.S.C. § 1226(a). (ECF No. 1 at 6.)  Respondents ask this Court to overrule itself and find mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2) lawful.  (ECF No. 6 at 3.)  The Court declines to do so.

Under the INA, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination. *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

In comparison, "[t]he government's proposed reading of the statute (1) disregards the

4

plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  Respondents offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including a bond hearing, at minimum.  Yet, Respondents have not provided Petitioner any such bond or custody hearing in over three months of detention, despite his written request.  Therefore, Respondents have violated § 1226(a) of the INA.

### B.      Fifth Amendment Procedural Due Process

Petitioner also alleges his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 5–6.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.  Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

5

"Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. Petitioner has lived in the United States for over two decades, during which he built a life, established deep roots in his community, and is raising a family. Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693. With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over three months without any opportunity to be heard as to the justification of his detention. He is unable to provide care for his minor children and work to support them. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received adequate process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to a final order of removal; his immigration proceedings are still pending.  Petitioner has no criminal history in the United States in over two decades of life, nor do Respondents contend that Petitioner is a danger to the public or a flight risk.  Therefore, the risk that he is being detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondent and are indeed the very processes required under § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker.  The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Respondents have not

provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case." (*See generally* ECF No. 6.)

Yet, Petitioner was not provided any notice, nor was he given a pre- or post-deprivation hearing in over three months of detention.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment and federal law. Accordingly, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner Juan A.P.D. (A# **221-489-573**) from custody.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

3.  **Respondents must file a notice of compliance with this Order by May 11, 2026.**

4.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

5.  The Clerk is directed to serve the **California City Corrections Center** with a copy of this Order.

6.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

///

///

IT IS SO ORDERED.

Date: May 7, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE